WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Frederick King, Jr., | ) | CIV 14-1229-PHX-SMM (MHB) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |

TO THE HONORABLE STEPHEN M. McNAMEE, UNITED STATES DISTRICT COURT:

Petitioner Frederick King, Jr., who is confined in the Arizona State Prison Complex, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5). Respondents filed an Answer (Doc. 16), but despite having an opportunity to do so, Petitioner has not filed a reply.

## BACKGROUND[1]

In September 2002, the State filed an indictment in Maricopa County Superior Court charging Petitioner with one count of first-degree murder, a class 1 dangerous felony (Count 1), two counts of attempted second-degree murder, class 2 dangerous felonies (Counts 2 and 3), and one count of attempted armed robbery, a class 3 dangerous felony (Count 4). (Exh. A.)

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 16 – Respondents' Answer.

The Arizona Court of Appeals summarized the facts underlying Petitioner's offenses as follows:

> On May 26, 2003, the Sunday before the Memorial Day holiday, manager Charles Robles and James Delcoure were working at the Tempe Loan Company, a pawn shop near Southern and Mill Avenues in Tempe. On any given day, the pawn shop had on hand in excess of $100,000 in jewelry, more than 50 handguns, and about $5,000 to $10,000 in cash.
>
> Both Mr. Robles and Mr. Delcoure carried firearms on the job at the direction of the owner, because of recent armed robberies of other pawn shops in the Phoenix area. Mr. Robles' Beretta firearm was in plain sight in a holster on his right hip; Mr. Delcoure's Smith and Wesson revolver was hidden from sight in the pocket of his shorts.
>
> At about 1:30 p.m., Mr. Robles responded to a report of a suspicious car in the alley adjacent to the pawn shop by walking outside to signal to the occupants that he was aware of their presence and did not want them loitering there. The suspicious car was later identified as [Petitioner]'s. About an hour later, [Petitioner] and Shane Turnboe came into the pawn shop, and [Petitioner] asked Mr. Robles how much he would give in pawn for his digital recorder and gold watch. [Petitioner] responded to the offer of $125 by saying he would try to see if he could get a better offer elsewhere.
>
> At roughly 4:30 p.m., a half hour before closing time, [Petitioner] returned to the pawn shop with Shane Turnboe, put the digital recorder and gold watch on the counter and told Mr. Robles he had decided to accept his offer of $125. Defendant claimed to have forgotten his identification, required by law to pawn an item, however, and asked Mr. Turnboe to go to the car and get it. Ten minutes passed before Mr. Turnboe returned, only to report the car was gone. Mr. Turnboe made several phone calls from [Petitioner]'s cell phone, which Mr. Robles assumed were to the driver. Another fifteen or twenty minutes passed while Mr. Turnboe and [Petitioner] waited for the driver of the car to return to the pawn shop.
>
> Finally, a few minutes before closing time, Mr. Turnboe pointed to Andre McDaniels walking across the parking lot toward the store, and said, there he is, he's here. As Mr. McDaniels walked toward the counter, he said he had brought the "Atlanta I.D.," and reached into his pocket as if to pull it out. Mr. Robles began scrolling through screens on the computer to start the pawn transaction. Mr. McDaniels did not pull any identification out of his pocket.
>
> Instead, without any verbal demand or warning, [Petitioner] took a step behind the front counter, pulled out a Glock revolver and shot Mr. Robles six times in the right side, striking him four times in the legs. When Mr. Robles looked up from the floor, he saw [Petitioner] above him, still firing his gun. He also heard firearms being fired from the area where he had last seen Mr. McDaniels and Mr. Turnboe.
>
> At the same time that [Petitioner] was shooting at Mr. Robles, a bullet struck the sewing machine handle inches from Mr. Delcoure's head at the opposite end of the store, near the front door. Mr. Delcoure looked up and saw that all three men had their weapons drawn and all appeared to be engaged in

shooting. He was fired at four or five times in a "cacophony" of gunshots from different locations.

Both Mr. Robles and Mr. Delcoure immediately reacted by drawing and firing, Mr. Robles from his position on the floor behind the counter, and Mr. Delcoure as he was backing out toward the front door and to the sidewalk in front of the pawn shop. Within an estimated four seconds of the initial shot having been fired, as Mr. Delcoure backed through the left front door with his gun drawn, Mr. McDaniel came through the right front door pointing his gun at Mr. Delcoure. Mr. Delcoure fired at Mr. McDaniel, and at [Petitioner] as they both fled. Mr. McDaniel fell east of the front door and was later pronounced dead from a single gunshot wound fired by Mr. Delcoure that entered his right armpit from the front and lodged in his left neck area.

[Petitioner], who had been wounded in the gun fire, ran across Southern Avenue and was picked up by his cousin, Christopher Mays, in [Petitioner]'s car. [Petitioner] was treated by passing paramedics flagged down by Mr. Mays, and the two were subsequently arrested.

[Petitioner] was wearing a bulletproof vest under his shirt, and his car contained a holster, a gym bag, a red bandana, a sawed-off shotgun, gloves, and a ski mask. One of the firearms from the robbery was registered to [Petitioner].

(Exh. J at ¶¶ 2-11.)

At trial, Petitioner "testified on his own behalf, claiming he had not intended to rob the pawn shop or to kill anyone, and [that] the shooting started when Mr. Robles shot him in the back several times for no reason." (Id. at ¶ 12; Exh. AAA at 100-20, 135.) Petitioner "claimed that he returned the fire only in self-defense and that he knew nothing about the sawed-off shotgun, gloves, and ski mask found in his car immediately after this incident." (Exh. J at ¶ 12; Exh. AAA at 85-86, 110-20, 135-36, 149-50.)

In May 2003, a jury convicted Petitioner on all counts. (Exh. B.) The trial court sentenced him to a life sentence with the possibility of parole after 25 years on Count 1, a consecutive aggravated term of 20 years' imprisonment on Count 2, a consecutive aggravated term of 14 years' imprisonment on Count 3, and an aggravated term of 12 years' imprisonment on Count 4, concurrent with the sentence on Count 1. (Exh. C.)

Petitioner filed a timely notice of appeal in the Arizona Court of Appeals on August 26, 2003. (Exh. D.) In June 2004, he filed an opening brief raising the following claims: (1) Petitioner was "convicted of first degree felony murder based upon an incorrect interpretation of the law;" and (2) The trial court "erred in failing to instruct on causation in connection

1   with the crime of first degree felony murder." (Exh. E at 8.) In July 2004, Petitioner filed a
2   "Notice of Supplemental Authority," in which he cited Blakely v. Washington, 542 U.S. 296
3   (2004), and argued that Blakely "call[ed] into question the constitutionality of the aggravated
4   sentences imposed in each count." (Exh. F.) The State filed an answering brief (Exh. G), and
5   Petitioner filed a reply brief (Exh. H). In October 2004, the Arizona Court of Appeals issued
6   an order accepting Petitioner's notice of supplemental authority as a supplemental brief.
7   (Exh. I.)

8         On February 1, 2005, the Arizona Court of Appeals issued a memorandum decision
9   rejecting Petitioner's claims and affirming his convictions, but vacating his sentences on
10  Counts 2 and 3 and remanding those counts for re-sentencing, pursuant to Blakely. (Exh. J.)
11  The State filed a petition for review, however, arguing that the court of appeals had
12  misapplied Blakely and incorrectly considered the claim under harmless error review instead
13  of fundamental error review. (Exh. K.) Petitioner filed a response to the petition for review
14  (Exh. L) and a cross-petition for review, seeking review of other issues (Exh. M).

15        The Arizona Supreme Court granted review of the State's petition for review, denied
16  Petitioner's cross-petition for review, and remanded Petitioner's case to the Arizona Court
17  of Appeals "for reconsideration in light of *State v. Martinez*, 210 Ariz. 578 (2005), and *State*
18  *v. Henderson*, 210 Ariz. 561 (2005)." (Exh. N.) On remand, the Arizona Court of Appeals
19  issued a decision order on November 25, 2005, vacating the portion of its prior decision
20  remanding the case to the trial court, and affirming Petitioner's convictions and sentences.
21  (Exh. O.) In June 2006, Petitioner filed an untimely "motion to extend time to file a pro per
22  petition for review" (Exh. P), and the Arizona Court of Appeals denied his motion as
23  untimely in July 2006 (Exh. Q).

24        Petitioner filed his first PCR notice on December 2, 2005. (Exh. R.) The trial court
25  appointed counsel to represent him. (Exh. S.) In March 2006, Petitioner's counsel filed a
26  PCR petition, asserting one ground for relief – that he had ineffective assistance of counsel
27  ("IAC") under the Sixth Amendment because his trial counsel failed to "raise the issue of
28  causation in the context of felony murder" and failed to request a jury instruction on

- 4 -

causation. (Exh. T at 5-13.) The State filed a response to the PCR petition. (Exh. U.) On June 2, 2006, the trial court summarily dismissed Petitioner's PCR petition, reasoning as follows:

> The Court finds that defendant's claim regarding causation cannot be asserted at this time because the Court of Appeals has already heard this issue and has rejected it. Pursuant to Rule 32.2(a)(2), [Ariz. R. Crim. P.], this issue cannot be reurged.
>
> Even if the issue could be raised, in order to raise a claim of ineffective assistance of counsel defendant must establish 1) that counsel's performance was not reasonable under all the circumstances and 2) that there is a reasonable probability that but for counsel's unreasonable conduct the result of the proceeding would have been different. State v. Salazar, 146 Ariz. 540, 707 P.2d 944 (1985).
>
> Defendant is unable to establish that there is a reasonable likelihood that the result of the proceedings would have been any different if trial counsel had raised the issue of causation. The Court of Appeals has already addressed this issue and determined that defendant's argument about causation is without merit. Without causation being an issue defendant cannot establish that the outcome of his trial would have been different.
>
> The Court finds that defendant has failed to present a sufficient basis for raising a claim of ineffective assistance of counsel and is not entitled to an evidentiary hearing.

(Exh. V.)

On July 28, 2006 – after the deadline for filing a petition for review had already passed – Petitioner filed a "[motion to] extend time to file petition for review on Rule 32." (Exh. W.) Petitioner filed a petition for review in the Arizona Court of Appeals on August 7, 2006. (Exh. X.) On August 17, 2006, the Arizona Court of Appeals dismissed the petition for review as untimely because Petitioner did not file it within 30 days of the trial court's decision under Arizona Rule of Criminal Procedure 32.9(c). (Exh. Y.)

On November 26, 2012, Petitioner filed a second PCR notice (Exh. Z), along with a PCR petition (Exh. AA) and a "request for discovery" (Exh. BB). In this PCR petition, Petitioner asserted the following claims: (1) actual innocence; (2) ineffective assistance of trial counsel; and (3) prosecutorial misconduct. (Exh. AA.) On January 3, 2013, the trial court dismissed Petitioner's PCR petition, noting this was his second PCR proceeding and that Petitioner initiated it "in an untimely manner." (Exh. CC.) The trial court also denied his request for discovery because he "failed to show good cause" to justify his request. (Id.)

- 5 -

1  Although Petitioner appears to have filed a "motion for extension of time to file petition for
2  review" (Exh. DD), the record indicates that Petitioner never filed any further pleading.
3        On December 31, 2013, Petitioner filed a "petition for a writ of habeas corpus" in the
4  trial court, raising: (1) a due process claim based on his trial counsel's failure to request a
5  lesser-included offense instruction of attempted theft; and (2) a claim of "newly discovered
6  evidence," arguing that State v. Wall, 212 Ariz. 1, 126 P.3d 148 (2006), constituted the "new
7  evidence" entitling him to a jury instruction on attempted theft as a "lesser" offense. (Exh.
8  EE at 12, 21-22.) On January 20, 2014, Petitioner filed a "request of status of state habeas
9  filing" (Exh. FF), and a deputy clerk of the superior court sent Petitioner a letter informing
10 him that his filing was "deemed an untimely PCR." (Exh. GG.) Petitioner then filed a
11 "motion for petition for a writ of habeas corpus to be file[d] timely under Rule 1.3
12 computation of time and Houston v. Lack, 487 U.S. 266 (1988)." (Exh. HH.)
13       On February 27, 2014, the trial court issued a minute entry construing Petitioner's
14 petition for writ of habeas corpus as a PCR notice and analyzing Petitioner's claims under
15 Rule 32 of the Arizona Rules of Criminal Procedure. (Exh. II.) The court noted that this was
16 Petitioner's "third Rule 32 proceeding" and that it was "both untimely and successive." (Id.)
17 Accordingly, the trial court dismissed this PCR proceeding, ruling that Petitioner was
18 "procedurally precluded from raising [his claims] now" under Rule 32.2(a)(2). (Id.)
19 Petitioner filed a "motion for rehearing pursuant to Ariz. R. Crim. P. 32.9(a)" in March 2014.
20 (Exh. JJ.) The trial court issued another minute entry dismissing Petitioner's PCR
21 proceeding, which contained identical language to its February 27, 2014, minute entry. (Exh.
22 KK.)
23       On May 2, 2014, Petitioner filed a "motion for clarification; motion for extension of
24 time to file petition for review." (Exh. LL.) The trial court issued a minute entry on June 25,
25 2014, denying the motion for clarification, declining to "reconsider or clarify prior rulings,"
26 and noting that Petitioner "continues to re-litigate the issues." (Exh. MM.) The trial court
27 granted Petitioner 90 days from the date of its ruling to file a petition for review. (Id.)
28

Petitioner filed a petition for review in the Arizona Court of Appeals on May 19, 2014 (Exh. NN), and a "supplement to petition for review" on June 30, 2014 (Exh. OO). The record is unclear as to the status of these pleadings.

On June 4, 2014, Petitioner filed a *pro se* "Motion for Stay of Habeas Proceedings" and lodged a Proposed Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. On June 24, 2014, the Court gave Petitioner 30 days to either pay the $5.00 filing fee or file a complete Application to Proceed *In Forma Pauperis*. That same day, the Clerk of Court filed Petitioner's lodged Petition (Doc. 5). On August 11, 2014, the Clerk of Court dismissed this action without prejudice and entered judgment against Petitioner for failure to comply with the Court's Order. On October 6, 2014, Petitioner paid the $5.00 filing fee. The Court vacated the Judgment entered on August 11, 2014, and ordered the Clerk of Court to reopen this action. In his Petition, Petitioner raises four grounds for relief. In Ground One, Petitioner asserts a claim of actual innocence because the evidence at trial showed that he was acting in self-defense. In Ground Two, Petitioner claims that the prosecutor engaged in misconduct during the trial. In Ground Three, Petitioner asserts a claim of ineffective assistance of trial counsel. In Ground Four, Petitioner claims that the trial court abused its discretion when it denied Petitioner's motion for judgment of acquittal.

**DISCUSSION**

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and must be dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed even though the petition is not filed until later. See Isley v. Arizona Department of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold, 536 U.S. 214, 223 (2002)). However, the time between a first and second application for post-conviction relief is not tolled because no application is "pending" during that period. See Biggs, 339 F.3d at 1048; see also King v. Roe, 340 F.3d 821 (9th Cir. 2003) (The petitioner was "not entitled to tolling during the interval between the completion of one round of state

- 8 -

1 collateral review and the commencement of a second round of review."). Moreover, filing
2 a new petition for post-conviction relief does not reinitiate a limitations period that ended
3 before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.
4 2003).

5       The statute of limitations under AEDPA is subject to equitable tolling in appropriate
6 cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for equitable tolling
7 to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2)
8 that some extraordinary circumstances stood in his way'" and prevented him from filing a
9 timely petition. Id. at 648-49 (quoting Pace, 544 U.S. at 418).

10       The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely. The
11 Arizona Court of Appeals issued its decision affirming Petitioner's convictions and sentences
12 on November 25, 2005. (Exh. O.) Petitioner's convictions became final 30 days later – on
13 December 25, 2005 – when the time expired for seeking review in the Arizona Supreme
14 Court. See Hemmerle v. Schriro, 495 F.3d 1069, 1073-74 (9th Cir. 2007).

15       Petitioner, however, filed his first notice of post-conviction relief before his
16 convictions became final. (Exh. R.) Because the notice was properly filed, it started tolling
17 AEDPA's 1-year statute of limitation before it started to run. The limitations period remained
18 tolled until June 2, 2006, when the trial court summarily dismissed Petitioner's PCR petition.
19 Because nothing was pending after the trial court's decision, the statute of limitations began
20 running the next day. See 28 U.S.C. § 2244(d)(2); see also Hemmerle, 495 F.3d at 1077
21 (after denial of review by the Arizona Supreme Court, "nothing remained 'pending' for
22 purposes of § 2244(d)(2).") The limitations period continued running uninterrupted for one
23 year – until June 3, 2007 – when it expired.

24       Petitioner's subsequent untimely petition for review and successive PCR proceedings
25 were rejected as untimely and/or filed after the limitations period had expired and, thus, did
26 not toll the limitations period. See Pace, 544 U.S. at 417 ("Because the state court rejected
27 petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to
28 statutory tolling under § 2244(d)(2)."); Ferguson, 321 F.3d at 823 ("[S]ection 2244(d) does

- 9 -

1  not permit the re-initiation of the [federal 1-year] limitations period that has ended before the
2  state petition was filed.").

3  Petitioner filed the instant habeas petition 7 years after the 1-year limitations period
4  expired. The Petition is therefore untimely.

5  The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably
6  tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United
7  States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other
8  grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998).
9  Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control
10 make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063,
11 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under
12 AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When
13 external forces, rather than a petitioner's lack of diligence, account for the failure to file a
14 timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v.
15 Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must
16 establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some
17 extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also
18 establish a "causal connection" between the extraordinary circumstance and his failure to file
19 a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir.
20 2007).

21 Petitioner has not proffered any extraordinary circumstance that would justify
22 equitable tolling or demonstrated that an external impediment hindered the diligent pursuit
23 of his rights. And, Petitioner's *pro se* status, indigence, limited legal resources, ignorance of
24 the law, or lack of representation during the applicable filing period do not constitute
25 extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448
26 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not,
27 by itself, an extraordinary circumstance warranting equitable tolling.").

28

1       And, although Petitioner claims he is actually innocent in Ground I of his Petition, he
2  has not made a credible claim of actual innocence to permit review of his untimely claims.
3  In Lee v. Lampert, 653 F.3d 929, 931 (9th Cir. 2011), the Ninth Circuit held that a credible
4  showing of "actual innocence" under Schlup v. Delo, 513 U.S. 298, 324 (1995), excuses the
5  statute of limitations period established by the AEDPA. "[A] petitioner who makes such a
6  showing may pass through the *Schlup* gateway and have his otherwise time-barred claims
7  heard on the merits." Id. at 932. To pass through the Schlup gateway, a "petitioner must show
8  that it is more likely than not that no reasonable juror would have convicted him in the light
9  of the new evidence." Schlup, 513 U.S. at 327. This standard "permits review only in the
10 'extraordinary' case, but it 'does not require absolute certainty about the petitioner's guilt or
11 innocence.'" House v. Bell, 547 U.S. 518, 538 (2006). The "petitioner must produce
12 sufficient proof of his actual innocence to bring him 'within the narrow class of cases ...
13 implicating a fundamental miscarriage of justice.'" Lee, 653 F.3d at 937 (quoting Schlup,
14 513 U.S. at 314-15). "The evidence of innocence must be 'so strong that a court cannot have
15 confidence in the outcome of the trial unless the court is also satisfied that the trial was free
16 of nonharmless constitutional error.'" Id. (quoting Schlup, 513 U.S. at 316). As noted in Lee,
17 "*Schlup* requires a petitioner 'to support his allegations of constitutional error with new
18 reliable evidence – whether it be exculpatory, scientific evidence, trustworthy eyewitness
19 accounts, or critical physical evidence – that was not presented at trial.'" Id. (quoting Schlup,
20 513 U.S. at 324). The habeas court considers all the evidence, both old and new,
21 incriminating and exculpatory, admissible at trial or not, and based on the complete record,
22 "the court makes a probabilistic determination about what reasonable, properly instructed
23 jurors would do." Lee, 653 F.3d at 938 (internal quotations omitted).

24      To support his claim of actual innocence, Petitioner disputes the State's evidence and
25 contends – as he did at trial – that he acted in self-defense. The Ninth Circuit Court of
26 Appeals has held that an actual innocence claim based on "a theory of justification pursuant
27 to self-defense" "corresponds with *Schlup*'s actual innocence requirement." Jaramillo v.
28 Stewart, 340 F.3d 877, 883 (9th Cir. 2003). To meet the Schlup standard, however, a

- 11 -

petitioner must present new, credible evidence that "considered in light of all the evidence, demonstrates that it is more likely than not that no reasonable juror would have convicted [Petitioner] of the charged offenses." Jaramillo, 340 F.3d at 883. Petitioner has not presented new, credible evidence that would have established his self-defense claim.

Petitioner presented his theory of justification pursuant to self-defense at trial. As the Arizona Court of Appeals noted, Petitioner "testified on his own behalf, claiming he had not intended to rob the pawn shop or to kill anyone, and [that] the shooting started when Mr. Robles shot him in the back several times for no reason." (Exh. J. at ¶ 12; Exh. AAA at 100-20, 135.) Petitioner further "claimed that he returned the fire only in self-defense and that he knew nothing about the sawed-off shotgun, gloves, and ski mask found in his car immediately after this incident." (Ex. J at ¶ 12; Exh. AAA at 85-86, 110-20, 135-36, 149-50.) The jury convicted him on all counts, rejecting his claim of self-defense. (Exh. B.)

In sum, lacking any new reliable evidence, has not made a credible claim of actual innocence to permit review of his untimely claims and, as such, Petitioner is not entitled to equitable tolling. Petitioner's habeas petition is untimely.

\\\
\\\
\\\
\\\
\\\

**CONCLUSION**

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 5) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED WITH PREJUDICE**;

1  **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 23rd day of April, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge